UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| PRECILLA A. PRESTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-1017-LJM-TAB |
| | ) | |
| CHANCELLOR'S LEARNING SYSTEMS, | ) | |
| INC., MANAGEMENT 2000, LLC, and | ) | |
| CARL WILLIAMS, in his individual and | ) | |
| management capacity, | ) | |
| Defendants. | ) | |

## <u>ORDER ON DEFENDANTS' MOTIONS TO DISMISS</u>

This matter comes before the Court on three separate motions to dismiss filed by defendants', Chancellor's Learning Systems, Inc. ("CLS"), Management 2000, LLC ("M2000"), and Carl Williams ("Williams") (collectively, the "Defendants").  Plaintiff initiated this action against the Defendants alleging sexual harassment and unlawful retaliation under Title VII of the Civil Rights Act of 1964, 42 U. S.C. § 2000e, *et. seq.*, and state law claims for battery, intentional infliction of emotional distress, and negligent retention or supervision.   The Court has considered the parties' arguments and, for the following reasons, defendant's, Carl Williams, Motion to Dismiss is **GRANTED in part and DENIED in part**; defendant's, Chancellor's Learning Systems, Inc., is **GRANTED in part and DENIED in part**; and defendant's, Management 2000, LLC, Motion to Dismiss is **GRANTED in part and DENIED in part**.

## I.  BACKGROUND

For the purposes of this motion, the Court accepts as true the well-pleaded factual allegations from the Complaint.  Preston began her employment with CLS on or about November 2006, as a Sales Representative.  Compl. ¶ 13.  At some point during or before Preston's employment with CLS, CLS contracted with M2000 whereby M2000 would provide certain administrative and human resource functions for CLS.  *Id.* ¶ 13.  CLS and M2000 shared decision-making on issues related to the terms and conditions of employment including, for example, pay, benefits, discipline, supervision and direction.  *Id.* ¶ 15.

At all times relevant, Williams supervised Preston.  *Id.* ¶ 16.  Williams constantly reminded Preston that Williams had the power to affect the terms and conditions of Preston's employment, including the ability to fire her, change her work schedule, and dictate the distribution of sales leads.  *Id.*  Williams began to harass Preston on account of her sex shortly after CLS hired Preston.  *Id.* ¶ 17.  This harassment often occurred in front of Preston's co-workers.  *Id.* ¶ 17.

Williams regularly subjected Preston to sexually inappropriate comments.  *Id.* ¶ 18.  For example, Williams commented on Preston's bodily features, and her voice and walk.  *Id.*  He stated how "hot" Preston looked, and what a "nice ass" she had.  *Id.*  Williams smacked and touched Preston's buttocks, and picked her up, threw her over his shoulder, and carried her around the office.  *Id.*  Williams "corner[ed]" Preston in such a fashion that she could not move and then leaned into her personal space.  *Id.*  Williams called and texted her after work hours and requested that she meet him, pick him up, or "do a little

2

dance for him." *Id.* Williams previously told Preston that he wanted to "have an affair with her" and that they should "run off to Vegas [to] get married." *Id.* Williams also discussed several sexual scenarios in detail and placed Preston into those scenarios. *Id.*

Preston told Williams "no" and instructed him to stop his harassment, but Williams did not comply. *Id.* ¶ 19. Preston then complained to CLS's accountant, Mike Mullen ("Mullen"), and Chief Operating Officer, David Rose ("Rose"), about Williams' behavior. *Id.* ¶ 20. Mullen and Rose referred Preston to Carrie Kopinski and Joe Kramer, who apparently worked on M2000's staff. *Id.* ¶ 20.

After detailing her version of the events to M2000, CLS and M2000 asked Preston to sign a statement prepared by CLS and M2000 that purportedly described the acts of harassment Preston reported. *Id.* ¶ 21. Preston amended the statement to more accurately reflect her version of the events and provided the amended statement to CLS and M2000. *Id.* CLS and M2000 provided Preston a revised statement that failed to incorporate Preston's changes. *Id.* Preston informed CLS and M2000 that the revised statement did not accurately reflect the facts and that she felt uncomfortable signing the statement in its current form. *Id.* CLS and M2000 informed Preston that if she did not[1] sign the statement as drafted, CLS and M2000 may not believe her story. *Id.*

Ultimately, CLS and M2000 informed Preston that they would take appropriate action and counsel the entire staff on sexual harassment. *Id.* ¶ 22. However, CLS and

---

[1] The Complaint actually states "Preston was informed by [CLS] and [M2000] that if she *did* sign the statement as drafted, that [CLS] and [M2000] could not be sure that they believed her 'story.' Compl. ¶ 21 (emphasis added). For the purposes of this Motion, the Court assumes that the absence of the word "not" was a typographical error, and treats the Complaint as if it stated "that if she did not sign the statement as drafted . . . ."

M2000 failed to take remedial action and did not counsel their staff.  *Id.*  In fact, Williams'

harassment of Preston continued.  *Id.*  In addition, Williams retaliated against Preston for

her complaints to CLS and M2000.  *Id.*  ¶ 24.  For example, Williams changed Preston's

work schedule to hours that Williams' knew Preston was unavailable.  *Id.* ¶ 25.  He also

distributed Preston's sales leads to other sales representatives and caused her numbers

and pay to suffer.  *Id.*  Williams' actions caused Preston to miss out on a promotion.  *Id.*

Preston reported Williams' retaliatory conduct to CLS and M2000, but neither CLS nor

M2000 took remedial action.  *Id.* ¶ 26.  Despite repeated complaints about Williams'

harassment, conduct, and acts, CLS and M2000 took no action against Williams.

Preston suffered harm because of Williams' continuing harassment for a period of

almost eleven months.  *Id.* ¶ 28.  The hostile work environment created by the Defendants

caused Preston's constructive discharge on October 31, 2007.  *Id.* ¶ 29.


## II. <u>STANDARD</u>

When ruling on this Motion to Dismiss under Rule 12(b)(6), the Court accepts as

true all well-pleaded factual allegations in the Complaint and the reasonable inferences

drawn from those allegations, and views them in the light most favorable to Preston.  *See*

*Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d. 614, 618 (7th Cir. 2007).  "A plaintiff's

complaint need only provide a 'short and plain statement of the claim showing that the

pleader is entitled to relief', sufficient to provide the defendant with 'fair notice' of the claim

and its basis."  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citing Fed. R.

Civ. P. 8(a)(2)); *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007)).   The

Complaint's "allegations must plausibly suggest that [Preston] has a right to relief, raising that possibility above the 'speculative level.'" *EEOC v. Concentra Health Care Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (quoting *Bell Atl.*, 127 S. Ct. at 1965)).

## III.  DISCUSSION

In his Motion to Dismiss, Williams argues that Preston's Title VII claims against him fail because Title VII does not permit claims against supervisors.  In addition, Williams argues that Preston's claim for negligent retention or supervision against him fails because Williams could not have negligently supervised or retained himself.  In response, Preston concedes that she has not asserted a claim for negligent supervision or negligent retention against Williams.  Pl.'s Resp. to Williams, at 2.  Preston also voluntary dismissed her Title VII claims against Williams.  *Id.*  Accordingly, Williams' Motion to Dismiss as to Counts I, II, and V of Plaintiff's Complaint is **GRANTED**.

In their Motions to Dismiss, both CLS and M2000 argue that the Indiana Worker's Compensation Act provides Preston her exclusive remedy for her tort claims and that, therefore, the Court does not have subject matter jurisdiction.  Alternatively, CLS and M2000 argue that Counts III and IV fail to state a claim upon which relief may be granted because Indiana law does no hold an employer liable for the intentional torts of its employee.

Finally, all of the Defendants argue that Preston's claim for intentional infliction of emotional stress fails to state a claim upon which relief may be granted because Preston

failed to allege facts that rise to the level of extreme and outrageous behavior as required under Indiana law.  The Court considers the Defendants' arguments in turn.

### A.  THE INDIANA WORKER'S COMPENSATION ACT

The Indiana Worker's Compensation Act (the "Act") provides, in part:

> The rights and remedies granted to an employee subject to IC 22-3-2 through IC 22-3-6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents, or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under IC 5-2-6.1

Ind. Code. § 22-3-2-6 ("the Exclusivity Provision").  CLS and M2000 argue that, under the Exclusivity Provision, the Act provides Preston her exclusive remedy .  Therefore, the Court should dismiss Counts III through V pursuant to Rule 12(b)(1) because the Court does not have subject matter jurisdiction over those claims.

The Court disagrees.  "The jurisdiction of the federal courts – their power to adjudicate – is a grant of authority to them by Congress."  *Goetzke v. Ferro Corp.*, 280 F.3d 766, 778-79 (7th Cir. 2002) (quoting *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165, 167 (1939)).  "Once Congress has conferred subject matter jurisdiction on the federal courts, state law cannot expand or contract that grant of authority."  *Id.* (citations omitted). In this case, the Court obtained subject matter jurisdiction over Preston's state law claims pursuant to the federal supplemental jurisdiction statute, 28 U.S.C. § 1367.  Similar to the exclusivity provision at issue in *Goetzke*, here the Exclusivity Provision "does nothing to affect that grant of jurisdictional authority."  *Goetzke*, 280 F.3d at 779.  Accordingly, CLS's and M2000's Motions to Dismiss pursuant to Rule 12(b)(1) are **DENIED**.

6

However, "[w]hether there remains a viable cause of action is a separate question" from whether the Court has subject matter jurisdiction, for "[i]f state substantive law has denied a plaintiff a remedy for his cause of action, the district court must dismiss the complaint for failure to state a claim upon which relief may be granted." *Id.* (citations omitted).   Accordingly, the Court must consider whether Indiana law, through the Exclusivity Provision, denies Preston the ability to assert her state law claims against CLS and M2000.  *Id.*

The Exclusivity Provision makes the benefits available under the Act an employee's exclusive remedy against her employer.   *See, e.g.*, *Harbison v. Prestige Group, Inc.,* Cause No. IP 990-0882-C H/G, 2001 WL 395786, at *33 (S.D. Ind, March 16, 2001).  The Act covers (1) personal injuries (or death); that (2) occur by accident; (3) arise out of employment; and (4) arise in the course of employment.  *Id.* (citing *Evans v. Yankeetown Dock Corp.*, 491 N.E.2d 969, 973 (Ind. 1986)).  The type of "personal injury" contemplated by the Exclusivity Provision includes both physical injury and "the somewhat different notions of 'disability' and 'impairment.'"  *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1288 (Ind. 1994).  To the contrary, a non-physical injury does not constitute a "personal injury" under the Exclusivity Provision.  *Id.* at 1288-89; *see McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1166 (7th Cir. 1998).  Where "the injuries at the heart of [a plaintiff's] complaint [a]re not physical, nor [i]s there any impairment or disability[,]" the Exclusivity Provision does not apply.  *Id.* at 1289.

The parties, unsurprisingly, disagree as to whether or not the injuries at the heart of Preston's complaint are physical injuries.  Preston argues that the Exclusivity Provision

does not bar her claims for battery, intentional infliction of emotional distress, and negligent retention and supervision "because her claims are based on emotional harm and distress and not physical injuries."  Pl.'s Resp. to M2000, at 4.  CLS and M2000 argue that the Exclusivity Provision applies here because Preston's claims are primarily based on overt physical conduct.

The Court concludes that the Exclusivity Provision does not bar Preston's state law claims.  Although Preston alleges that Williams physically touched her, nowhere in her Complaint does she allege physical injury.  Preston does not request relief for damages for physical injury, but rather requests damages related to lost wages and benefits, emotional distress, mental anguish, humiliation, embarrassment, inconvenience, and other intangible harm she has suffered as a result of Defendants' alleged violations.  Compl. at ¶ 10.  Moreover, to the extent the Complaint may be read to request damages from physical injury, specifically Preston's battery claim, Preston concedes that she does not and will not assert physical injury, and has offered to amend her Complaint to conform to that concession.  The Court therefore precludes Preston from requesting damages from physical injury for the duration of this matter.  Ultimately, although Preston alleges that Williams physically touched her, the injuries "at the heart" of Preston's complaint "[a]re not physical, nor [i]s there any impairment or disability."  *Perry*, 637 N.E.2d at 1289.  Therefore, the Act does not provide Preston's exclusive remedy.  *Id.*

## B.  COUNTS III & IV

CLS and M2000 argue that the Court should dismiss Preston's claims against them for battery and intentional infliction of emotional distress in Counts III and IV, respectively,

fail to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). Specifically, CLS and M2000 argue that Counts III and IV fail because Indiana law does not hold employers liable for the intentional torts of their employees.

Under Indiana law, "vicarious liability will be imposed upon an employer under the doctrine of *respondeat superior* where the employee has inflicted harm while acting 'within the scope of employment.'" *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008) (quoting *Sword v. NKC Hospitals, Inc.*, 714 N.E. 2d 142, 148 (Ind. 1999)). To fall "within the scope of employment," the employee's injurious act must be "incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Id.* (citing *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000)).

As to Preston's battery claim, Preston cannot demonstrate the CLS or M2000 authorized Williams to touch Preston as part of Williams' employment. Preston has not alleged that CLS or M2000 authorized, either explicitly or implicitly, Williams to physically touch Preston "[o]ther than perhaps a greeting handshake[.]" *Barnett*, 889 N.E.2d at 286. Rather, after asserting facts about Williams' behavior, Preston merely asserts that Williams acted "within the scope of his employment." Compl. ¶ 52. Although Preston's Complaint "need only provide a 'short and plain statement of the claim showing that the pleader is entitled to relief', sufficient to provide the defendant with 'fair notice' of the claim and its basis[,]" *Tamayo*, 526 F.3d at 1081, the Complaint's "allegations must plausibly suggest that [Preston] has a right to relief, raising that possibility above the 'speculative level.'" *Concentra Health Care Servs., Inc.*, 496 F.3d at 776-77. Preston has failed to allege sufficient facts that, if true, demonstrate CLS and M2000 authorized Williams' alleged

9

unlawful touching.  Accordingly, as to Count III of Preston's Complaint, CLS's and M2000's Motions to Dismiss are **GRANTED**.

As to Count IV, Preston argues that some of the conduct by Williams' that caused severe emotional distress was authorized by CLS and M2000 and that, therefore, she is entitled to have a jury decide whether or not CLS or M2000 authorized Williams' behavior as a whole.  However, even assuming that CLS and M2000 had authorized some of Williams' actions, Preston has not alleged facts that, if true, demonstrate Williams acted to "further [CLS's and M2000's] business."  *Barnett*, 889 N.E.2d at 283.  Rather, the Complaint alleges that Williams acted for his own benefit.  Accordingly, Preston's claims for intentional infliction of emotional distress against CLS and M2000 fail as a matter of law.  CLS's and M2000's Motions to Dismiss as to Count IV of Preston's Complaint are **GRANTED**.

All that remains is Williams argument that Preston's claim for intentional infliction of emotional distress against him fails as a matter of law because the Complaint does not contain "the requisite allegations of extreme and outrageous conduct."  Williams' Br. at 4.

In Indiana, "to maintain a cause of action for intentional infliction of emotional distress, a plaintiff must show that the defendant intentionally or recklessly engaged in extreme and outrageous behavior and caused severe emotion distress to the plaintiff." *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620,650 (7th Cir. 2006) (citing *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991)).  Conduct is extreme and outrageous

> only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average

> member of the community would arouse his resentment against the actor,
> and lead him to exclaim, "Outrageous!"

*Id.* (quoting *Powerdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1264 (Ind. Ct. App. 2002)).

First, Williams argues that the Complaint does not contain the requisite specificity as required by Rule 8(a).   Fed. R. Civ. P. 8(a).   However, Preston alleges specific instances of Williams' behavior and asserts that said behavior was not only extreme and outrageous, but also caused severe emotional harm.  Compl. ¶¶ 18-25, 54-56.  Rule 8(a) requires nothing more.  *Tamayo*, 526 F.3d at 1081 (citing FED. R. CIV. P. 8(a)(2)).

As to the merits of whether or not Preston's Complaint asserts a claim upon which relief may be granted, as the Seventh Circuit has stated, "Indiana courts have been reluctant to award damages for intentional infliction of emotional distress in employment cases." *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1167 (7th Cir. 1998). Nonetheless, Preston cites *Bradley v. Hall* 720 N.E.2d 747 (Ind. Ct. App. 1999), in support of her position that the Complaint sufficiently alleges extreme and outrageous conduct.  In *Bradley*, an employee's supervisor harassed the employee for nearly twenty years.  The supervisor shouted at the employee and criticized her in front of the employee's co-workers.  *Id.* at 749.  After the employee complained to management, the supervisor blamed the employee for a poor performance review and the relationship between the employee and supervisor deteriorated.  *Id.*  The supervisor continued to reprimand the employee about her work and, on several occasions, inquired about the employee's menopause.  *Id.*  On one occasion, the supervisor  asked the employee if the employee's husband was sexually impotent due to his diabetes.  *Id.*  The supervisor lied to the employee about the employee's job security, and encouraged the employee to apply

11

elsewhere. *Id.* The court concluded that these facts created a genuine issue of material fact as to whether the supervisor's conduct constituted "extreme and outrageous" behavior. *Id.* at 752-53.

Here, Preston's Complaint alleges fact that, if true, demonstrate Williams' behavior is potentially more "extreme and outrageous" than the behavior the *Bradley* court held created a genuine issue of material fact. *Id.* Preston alleges that Williams regularly commented on Preston's bodily features, and her voice and walk. Compl. ¶ 18. He stated how "hot" Preston looked, and what a "nice ass" she had. *Id.* Williams smacked and touched Preston's buttocks, and picked her up, threw her over his shoulder, and carried her around the office. *Id.* Williams "corner[ed]" Preston in such a fashion that she could not move and then leaned into her personal space. *Id.* Williams called and texted her after work hours and requested that she meet him, pick him up, or "do a little dance for him." *Id.* Williams previously told Preston that he wanted to "have an affair with her" and that they should "run off to Vegas [to] get married." *Id.* Williams also discussed several sexual scenarios in detail and placed Preston into those scenarios. *Id.* Moreover, Williams continued this behavior even after Preston told Williams "no" and instructed him to stop his harassment. *Id.* ¶ 19. When Preston confronted management, Williams not only failed to stop his harassment, he retaliated against Preston by changing Preston's work schedule to hours that Williams' knew Preston was unavailable. *Id.* ¶ 25. He also distributed Preston's sales leads to other sales representatives and caused her numbers and pay to suffer. *Id.*

The Court concludes that, taking the allegations in the Complaint as true, under Indiana law "[r]easonable persons may differ on the questions of whether [Williams'] conduct was extreme and outrageous[.]" *Bradley*, 720 N.E. 2d at 753.

Finally, Williams argues that Preston failed to allege that Williams acted with the requisite intent to harm Preston emotionally.  However, viewing the allegations of the Complaint together, the Court concludes that Preston has satisfied the notice-pleading requirements of Rule 8(a).  *Tamayo*, 526 F.3d at 1081 (citing Fed. R. Civ. P. 8(a)(2)); Compl.¶¶ 18-25, 54-56.  Accordingly, Williams' Motion to Dismiss Count IV is **DENIED**.


## IV.  <u>CONCLUSION</u>

For the foregoing reasons, defendant's, Carl Williams, Motion to Dismiss is **GRANTED in part and DENIED in part**; defendant's, Chancellor's Learning Systems, Inc., Motion to Dismiss is **GRANTED in part and DENIED in part**; and defendant's, Management 2000, LLC, Motion to Dismiss is **GRANTED in part and DENIED in part**.

IT IS SO ORDERED this 4th day of June, 2009.


LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana


Distribution attached.

13

Distributed to:

John H. Haskin
HASKIN LAUTER & LaRUE
jhaskin@hlllaw.com

Richard W. McMinn
HASKIN LAUTER & LaRUE
rmcminn@hlllaw.com

Kelli M. Block
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
kblock@scopelitis.com

Alvin Jackson Finklea III
SCOPELITIS GARVIN LIGHT & HANSON
jfinklea@scopelitis.com

David M. Henn
MCCLURE MCCLURE DAVIS & HENN
dhenn@mmdhlaw.com

Scott D. Pankow
ATTORNEY AT LAW
pankows@dslindiana.net

David D. Robinson
SCOPELITIS GARVIN LIGHT & HANSON
drobinson@scopelitis.com